## THE CENTRAL RAILROAD *vs.* ENGLISH.

[HALL, Justice, not presiding.]

1. A tenant rented certain land for the year 1877, knowing that a railroad company maintained a nuisance thereon in the shape of a pond of water, which affected the health of his family. With this knowledge, he rented the place for the year 1878, when it became more sickly, so much so that he was unable to gather his crops ; and an action was brought against the railroad :

*Held*, that the landlord had the right to use and occupy the place, and under his lease, the tenant had the same right, and he could presume that the railroad company would abate the nuisance. The law did not require him to move away, but did require the company to abate such nuisance ; and it was, therefore, not error to refuse to charge that if the plaintiff could have avoided the injury to himself, he could not recover.

2. Where one railroad company erected a nuisance, and was subsequently leased to another company, which continued to maintain such nuisance, if the owner of the property on which it was situated notified the president and officers of the lessee company of it, and his tenant also notified the section master of the company, this was sufficient notice and demand for abatement, and the tenant could bring an action for injuries resulting to him without more. Notice of the nuisance is sufficient.

October 23, 1884.

Railroads. Damages. Negligence. Nuisance. Land-lord and Tenant. Before Judge Simmons. Houston Superior Court. April Term, 1884.

English brought his action for damages against the Central Railroad, alleging, in brief, as follows : The Southwestern Railroad built an embankment so as to dam and pond up the waters of a certain creek which was crossed by its track, thus rendering the neighborhood sickly and creating a nuisance. The Central Railroad leased the Southwestern road, and continued the nuisance in 1878 and 1879, though often notified to abate it. Plaintiff leased the land on which was the pond from the owner for farming purposes in 1878 and 1879, moved thereon with his family, and planted and proceeded to cultivate it until the summer and fall months, when his family were stricken with chills and fever arising from the maintenance of the pond ; and he was unable to finish the cultivation of the crop, the greater portion of it proving a loss ; and some of his children died.

Defendant pleaded the general issue ; that the pond existed before the plaintiff rented the land, and he had full knowledge of it, and was not entitled to recover ; and that, if plaintiff had any right of action, it was against his landlord, and not against defendant.

It is unnecessary to detail the evidence further than the following : Flournoy, the landlord of the plaintiff, testified that the means of carrying off the water from the land were totally inadequate, and that the culvert built by the railroad for that purpose was too high above the creek, which ran at that point, to carry off the water effectually, and that the ditch was not cleaned out by the railroad company ; also that he notified the president, superintendent, the road-master, the supervisor and the overseer of the condition of the culvert and the backing of water on his land, and requested that it be put in proper condition. Some of these notices were personal and others by letter.

When asked if he ever gave any notice on behalf of his tenant, the plaintiff, he said that he did so notify the railroad overseer; and that he thought he had spoken to one other official of the road about the condition of the plaintiff's family and the necessity of putting the drain in proper condition, but of this he was not positive.

Plaintiff testified that he notified the section-master of the road of the condition of the pond and ditch, who replied that it was not worth while to clean it, as it would fill up every rain. (This was denied by the section-master who also stated that he had no authority to do the work without orders from his superior officer.) It appeared that plaintiff moved on the place in 1877, and rented for that year, and also rented for 1878; that the pond was there in both years. He testified that the sickness in his family first began in the fall of 1877 ; that in that year he made a good crop, and planted a crop in 1878, but his family were sick and unable to work, and thereby he was unable to gather a full crop, and was put to expense in hiring help. There was other testimony as to loss of crops, and his expenses incurred in hiring labor to take the place of his sick family were stated at about $200.00 to $250.00.

Much other testimony was introduced on both sides, which need not be stated. There was conflict on almost every material point—the cause of the pond, its effect, the loss of plaintiff, and whether the railroad company had done what was necessary in making the culvert and cleaning the ditch.

The jury found for the plaintiff $200.00. Defendant moved for a new trial, on the following grounds:

(1) to (3.) Because the verdict was contrary to law, evidence and the charge of the court.

(4.) Because the court refused to give in charge §3034 of the Code.

(5.) Because the court refused to charge as follows: "If you are satisfied from the evidence that the plaintiff, English, rented this place in the year 1877 and lived on

it, and knew all about the pond, and that it created sick-ness of himself and family, and after this knowledge of the existence of the pond, and that it did create sickness, he again rented the same land and resided on it for the year 1878, then I charge you that he cannot recover in this case, unless it should appear from the evidence that the size of the pond was increased by the negligence of the defendant during the year 1877 or 1878, so as to cause additional injury to the plaintiff or family or crop."

The motion was overruled, and defendant excepted.

W. S. WALLACE & SON, for plaintiff in error.

DAVIS & RILEY, for defendant.

BLANDFORD, Justice.

1. The only complaint upon the part of the plaintiff in error as to the action of the court below is, that the court refused to charge the jury, as requested, that if the plaintiff below could have avoided the injury to himself, then he cannot recover.

Under the facts of this case, we think the court did right to refuse this request. It appeared that defendant in error rented from one Flournoy certain lands for the year 1877; that he knew that plaintiff in error maintained a nuisance on this land, which was a pond of water, which affected the health of his family; that with this knowledge, he rented the place for 1878, when it became more sickly, so much so that he was unable to gather his crops.

The landlord had the right to use and occupy this land; when he leased the same to English, he had the same rights which the landlord had; he had a right to presume that the railroad company would abate this nuisance; the law did not require him to move away, but did require the railroad company to abate the nuisance; hence the refusal to charge as requested was right.

2. The only other ground of error is, that English should

v 73-25

have notified the Central Railroad to abate the nuisance, and that, having failed to do so, he could not recover.

It is true that the Southwestern Railroad Company originally erected the nuisance, and that the Central Railroad became the lessee of the Southwestern Railroad. It furthermore appears that the landlord, Flournoy, had notified the Central Railroad, after it became the lessee of this road, of this nuisance, by notifying the president and other officers of this corporation; and that English himself had notified the section-master of this nuisance. This was sufficient notice and a sufficient demand. 7 *Ga.*, 296; Code, §3001. If the plaintiff in error had notice of the nuisance, then this is all that is required before action brought. 7 *Ga.*, 296.

Judgment affirmed.