COURT OF CHANCERY
OF THE
STATE OF DELAWARE

PATRICIA W. GRIFFIN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947

Final Report:    March 6, 2018
Draft Report:    August 22, 2017
Date Submitted:    July 18, 2017

Peter K. Schaeffer, Esquire
Avenue Law
1073 South Governors Avenue
Dover, DE 19904

Robert G. Gibbs, Esquire
R. Eric Hacker, Esquire
Morris James Wilson Halbrook & Bayard, LLP
107 West Market Street
Georgetown, DE 19947

Re:   *Marina View Condominium Association of Unit Owners v. Rehoboth Marina Ventures, LLC*
      C.A. No. 2017-0217-PWG

Dear Counsel:

Plaintiff, Marina View Condominium Association of Unit Owners ("the Association"), filed this action on March 22, 2017.  Count I of the complaint seeks a permanent injunction against Defendant, Rehoboth Marina Ventures, LLC ("the Marina") because of the Marina's alleged violations of the parties' lease agreement.  Counts II and III of the complaint seek rescission of the lease based upon failure of consideration, unconscionability, fraud and collusion.  The Marina

filed a motion to dismiss the complaint under Court of Chancery Rule 12(b)(7), and to dismiss Counts II and III under Court of Chancery Rule 12(b)(6) and Rule 9(b). It detailed the grounds for dismissal in its opening brief, which included the Association's failure to join necessary parties and state a claim, failure to plead the necessary elements for rescission, fraud or unconscionability, and that the relief sought has legal remedies abrogating the Court of Chancery's subject matter jurisdiction. Count I of the complaint – seeking injunctive relief for a breach of contract – is not subject to the motion to dismiss.

The Association then filed a motion for judgment on the pleadings. Vice Chancellor Glasscock stayed consideration of the motion for judgment on the pleadings pending a decision on the motion to dismiss. The case was reassigned to me and this is my decision on the motion to dismiss.

I recommend that the Court deny Marina's motion to dismiss the complaint for failure to join all indispensable parties, and grant the motion to dismiss as to Counts II and III of the complaint. This is a final report.

## BACKGROUND

In July of 2006, Marina Motel Ventures, LLC ("Motel Ventures"), entered into a marina lease ("lease") with Rehoboth Marina Ventures, LLC, which was recorded in the Sussex County Recorder of Deeds on July 26, 2006. The lease

concerns a marina business used in conjunction with a subaqueous lease that the Marina operates on property owned by Motel Ventures. The lease provides that the property used by the Marina is considered "common elements" of the Association, and includes the marina building, adjacent parking and other designated "marina areas." The initial term of the lease is 99 years, followed by another term of 99 years, unless the Marina provides notice of non-renewal. The Marina is obligated to maintain the subaqueous lease with DNREC, reserve marina slips for use by Association unit owners ("unit owners") at a discounted rate (20% off of the market rate), and to pay its share for maintenance, repair and replacement of parking areas. The lease provides that the leased property shall be used for the purpose of conducting a marina, "and no part of the Leased Property shall be used for any other purposes without the prior written consent of Lessor."[1] The Marina is responsible for paying for its trash removal, utilities, and other operating expenses. Acts of default and remedies for default are specified in the lease.

There are two amendments to the lease – both executed by the original parties to the lease – the first dated August 14, 2006 and the second dated April 14, 2008. The first amendment provides that the Council of the Association will be

---

[1] Def.'s Opening Br. in Supp. of Mot. to Dismiss, Ex. A (Marina Lease), § 5(a) (June 2, 2017).

notified and must consent prior to making any changes to the lease that will affect the substantive rights of the unit owners. The second amendment provides that the Marina shall have the right to assign, mortgage, sublease or otherwise encumber the lease without the consent of Motel Ventures. All such actions are deemed "subject to and subordinate to" the lease. Copies of mortgages must be provided to Motel Ventures.[2]

The complaint states that ownership of the leased premises passed from Motel Ventures to the Association "some hours later the same day" when the lease was recorded, and that the Declaration of Condominium ("Declaration") for the Association was recorded subject to the lease.[3] The complaint also alleges that "[o]n information and belief, the members of the limited liability companies party to the Marina Lease on July 26, 2006 were identical."[4]

The complaint also alleges that issues arose in December 2016 when the Association noticed that the Marina was building "vacation apartment buildings on leased property."[5] The Association requested that the Marina cease and desist such activity as not marina-related, and the Marina refused to do so.

---

[2] *Id.,* Ex. A.
[3] Verified Compl., 2 (Mar. 22, 2017).
[4] *Id.*
[5] Pl.'s Ans. Br. in Opp. of Mot. to Dismiss, 1 (July 6, 2017).

The Association also filed an action for summary possession of the leased property in the Justice of the Peace Court ("J.P. Court") on June 14, 2017. The Marina filed a motion to dismiss or stay the proceedings in the J.P. Court pending resolution of the previously-filed litigation in the Court of Chancery, and, on July 19, 2017, the J.P. Court stayed the summary possession action pending determination of this case.

The Association and the Marina have taken exceptions to the draft version of this report. I have either modified the body of this report to address the exceptions taken, or consider them adequately addressed in this report.

## ANALYSIS

### A. Who are indispensable parties under Rule 19?

This Court may dismiss this action under Court of Chancery Rule 12(b)(7) for failure to join an indispensable party under Rule 19. Rule 19 provides for the joinder of persons needed for just adjudication. Under Rule 19(a), the Court determines whether an absent person should be party to the litigation because they have an interest in the subject of the action which, if they are not included, will mean that disposition in the case will injure their rights or subject them to substantial risk of multiple or inconsistent obligations related to that interest. If their joinder is necessary, the Court orders them to be joined. If joinder is not

feasible, the Court determines whether "in equity and good conscience" the action should proceed or be dismissed because the person is a necessary party under Rule 19(b) factors. Rule 19(b) factors include: to what extent a judgment might be prejudicial to the absent person or parties; the extent to which provisions in the judgment can lessen or avoid prejudice; whether the person's absence will render the judgment inadequate; and whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder. The factors are interdependent and must be considered in relation to each other and the facts of the case.[6]

The Marina argues that the Association has failed to include all necessary parties under Rule 19, such as the individual unit owners, and other holders of interests in the property subject to, or affected by, the leasehold, including any mortgagees or lien holders of any units, any Association property or the Marina leasehold, or marina tenants. It argues that the Association was required to indicate whether these persons existed and whether their rights were represented. It also claims that the Association failed to plead its representative capacity and its failure to do so leaves the complaint subject to dismissal because there is no

---

[6] *Makitka v. New Castle Cty. Council*, 2011 WL 6880676, at *4 (Del. Ch. Dec. 23, 2011).

averment in the complaint as to how unit owners are adequately represented in the litigation.[7]

I will first address the argument that unit owners must be included as necessary parties to this litigation. This argument is similar to the argument made by the defendants in *Council of Unit Owners of Sea Colony E. v. Carl M. Freeman Assocs., Inc.*[8] In that case, the council of the unit owners was suing in a representative capacity on behalf of the owners for defects in common elements.[9] Defendants asserted in support of their motion to dismiss that the council failed to join the unit owners who are needed for just adjudication, leaving defendants subject to the risk of multiple obligations. The Court found that the individual unit owner participation is not necessary because the council represents the unit owners' complete interest as to the common elements.[10] Similarly, here, the issue pertains to a common element of the Association – the marina property – and the Association is defined as "all of the Unit Owners acting as a group in accordance with the Code of Regulations."[11] Unlike the homeowners in the cases cited by the

---

[7] Def.'s Opening Br. in Supp. of Mot. to Dismiss, 8.

[8] 531 A.2d 1217, 1220-21 (Del. Super. 1987).

[9] *Id.* at 1218.

[10] *Id.* at 1221; *See also Gull Point v. Util. Sys.*, 2004 WL 1965923, at *1 (Del. Super. Aug. 2, 2004).

[11] Pl.'s Ans. Br. in Opp. of Mot. to Dismiss, Ex. C (Marina View Condominium Declarations), §2(a).

Marina, individual property rights are not at issue here and the Association can adequately represent the unit owners' interests in common elements. The cases asserted by the Marina to show that individual unit owners are necessary parties are distinguishable because those cases dealt with different circumstances, holding that landowners are necessary parties to an appeal from a decision of the board of adjustment that directly affects their property.[12] Because this case pertains only to common elements, I recommend that the Court deny the Marina's motion to dismiss for failure to include unit owners as necessary parties.

Next, the Marina argues that the Association lost its ability to claim representative status for unit owners when it did not assert in the complaint that it represents the interests of the unit owners. The Association's standing to sue is not an issue, because it is undisputed that the Association is the successor-in-interest to the original lessor, Motel Ventures, and the lawsuit alleges a breach of the lease terms. The Marina asserts that, since the Association did not specifically allege its representative capacity in the complaint, it does not represent the unit owners' interests.

On a motion to dismiss, the Court can consider documents extrinsic to the complaint but that are integral to, or incorporated by reference into, the

---

[12] *CCS Inv'rs, LLC v. Brown*, 977 A.2d 301, 322-23 (Del. 2009); *See also Hackett v. Bd. of*

complaint.[13]  In determining what documents are integral to the complaint, there is

no bright-line rule for the Court to follow and the Court must make a "facts-and-

circumstances" inquiry.[14]  Although extraneous to the complaint, both the lease

and the Declaration are referenced in the complaint and the Marina's alleged

violation of the lease serves as the basis for this litigation.[15]  I find that, for the

limited purposes of the motion to dismiss, the lease and the Declaration are

incorporated into the complaint.[16]

---

*Adjustment of Rehoboth Beach*, 794 A.2d 596, 597-98 (Del. 2002).

[13] *See, e.g., Horman v. Abney*, 2017 WL 242571, at *2, n. 2 (Del. Ch. Jan. 19, 2017) (citing *In re Crimson Exploration Inc. S'holder Litig.*, 2014 WL 5449419, at *8 (Del. Ch. Oct. 24, 2014) ("A judge may consider documents outside of the pleadings only when: (1) the document is integral to a plaintiff's claim and incorporated in the complaint or (2) the document is not being relied upon to prove the truth of its contents")); *Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 96, n. 2 (Del. 2013); *Orman v. Cullman*, 794 A.2d 5, 15-16 (Del. Ch. 2002) (citing the general rule that documents extrinsic to the complaint may be considered when deciding a Rule 12(b)(6) motion, when the document is integral to a plaintiff's claim and incorporated into the complaint, and is not being relied upon to prove the truth of its contents).

[14] *See In re Gardner Denver, Inc.*, 2014 WL 715705, at *2-*3 (Del. Ch. Feb. 21, 2014) ("The Court's context-specific analysis to determine whether a document is integral cautions against an effort to synthesize this precedent into a bright-line rule").

[15] Verified Compl., 1-2.

[16] The earlier draft report also incorporated the Code by reference.  In response to the parties' exceptions, I no longer incorporate the Code or rely on it to evaluate the pending motion to dismiss.  For purposes of this motion to dismiss, references to the Association's role related to unit owners in the lease and the Declaration are sufficient from which to infer the Association's capacity to represent the unit owners.  The Marina, in its reply brief, contends that referencing the Code to show the Association's authority to represent the unit owners is insufficient because the Code only grants the Association conditional authority to litigate and the Association has not averred those conditions have been met. Def.'s Reply Br. in Supp. of Mot. to Dismiss, 8-10 (July 18, 2017).  I decline to address the issues concerning the interplay between the lease and the Declaration and Code, including related to any litigation preconditions in the Code, recognizing that the Code is not under consideration for purposes of the motion to dismiss.  I find that these

For a motion to dismiss, the Court accepts all well-pled allegations of the complaint as true and draws all reasonable inferences from those allegations in the non-moving party's favor.[17] Considering the lease and the Declaration as incorporated by reference into the complaint and drawing reasonable inferences in the Association's favor, I find there are sufficient factual allegations to show the Association's capacity to represent the unit owners' interests.[18] Accordingly, for purposes of denying the motion to dismiss for failure to include necessary parties, I recommend the Court conclude that the Association has the authority to represent the interests of the unit owners and that individual unit owners are not indispensable parties for purposes of this action.

The Marina further argues that the complaint should be dismissed because all holders of interests in the property subject to, or affected by, the leasehold, including any mortgagees or lienholders of any units, any Association property or the Marina leasehold, and marina tenants, are indispensable parties to this action.

---

issues are not properly before the Court and do not need to be addressed at this stage of the proceeding.

[17] *In re Ebix, Inc. Stockholder Litig.*, 2014 WL 3696655, at *7 (Del. Ch. July 24, 2014).

[18] The 2006 amendment to the lease requires that the Council of the Association be notified and its consent obtained before the lease can be changed to modify the substantive rights of the unit owners. The Declaration defines the Association as "all of the Unit Owners acting as a group in accordance with the Code of Regulations," and the Association's governing council's responsibilities as managing the business operations and affairs of the property on behalf of the unit owners. This inference is further bolstered by the Delaware Unit Property Act, which states

The cases cited by the Marina in support of its claim that all mortgagees and lienholders are necessary parties, *Hendry v. Hendry*[19] and *Makitka v. New Castle Cty. Council*[20], are distinguishable. In *Hendry*, the issue before the Court was not whether the person with the leasehold interest was a necessary party. I agree with the Marina that the *Hendry* case held that a lease of land is an interest in land.[21] But it doesn't necessarily flow from that holding that all persons with an interest in land are indispensable parties in a legal action. In *Makitka*, the Court concluded that a record owner of property is a necessary party to litigation challenging that land's development, after analyzing the property owner's situation under Rule 19.[22]

Here, the case is not challenging land development but related to the marina property, which is a common element of the condominium. To determine whether mortgagees and lienholders are indispensable parties to this litigation, the analysis focuses on whether their interests in the subject of the action are "of such a nature" that disposition of the matter may impair or impede their ability to protect their interest or that, without them, complete relief cannot be attained by the parties

---

that an Association's Council has authority to manage the affairs of the property "on behalf of unit owners." 25 *Del. C.* § 2202(5).

[19] 2006 WL 1565254, at *7 (Del. Ch. May 26, 2006).

[20] 2011 WL 6880676, at *3 (Del. Ch. Dec. 23, 2011).

[21] *Hendry*, 2006 WL 1565254, at *7.

[22] *Makitka*, 2011 WL 6880676, at *4-*6.

before the Court.[23]  The central issue in this case is the operation of the marina, and the use of the marina is a common element of the condominium units.  The interests of the unit owners' mortgagees and unit owners are similar in ensuring that the benefit and value from the marina as a common element to the condominium units is protected.  And, the parties can achieve resolution in the case without joining the unit owners' mortgagees as parties.[24]  Consistent with the conclusion that individual unit owners are not indispensable parties and the Association can represent their interests, I find that unit owners' mortgagees are not necessary parties to this action.

Looking at the allegations most favorably for the Association, there is also no basis to conclude that mortgagees or lienholders for Association property are necessary parties to the suit.  As to mortgagees and lienholders of the Marina lease, the second amendment to the lease states that they take subject and subordinate to the lease, and there is no allegation that their interests are unique from those of the Marina.  I recommend that the Court deny the motion because none of those mortgagees or lienholders are indispensable parties to this action.

---

[23] *Cf. Council of Civic Organizations of Brandywine Hundred, Inc. v. New Castle Cty.*, No. 1991 WL 279374, at *3 (Del. Ch. Dec. 26, 1991), *on reargument,* 1992 WL 24987 (Del. Ch. Feb. 11, 1992); *N. Nat. Gas Co. v. Hogoton Plains Gas & Oil Co.*, 187 A.2d 432, 435 (Del. Super. 1963).
[24] *See N. Nat. Gas Co.*, 187 A.2d at 435 (holding that a mortgagee, pledgee and assignee of defendant was not indispensable party to the lawsuit).

Finally, the Marina asserts that "marina tenants" are also indispensable parties.[25] I do not find that the marina tenants – which I presume means boat-slip renters – have interests that meet the standards for indispensable parties under Rule 19. Under the lease, unit owners are offered the opportunity to enter into a seasonal lease for a boat slip each year at a discounted rate.[26] Boat slips not leased by unit owners may be rented to others. Under the terms of the lease, boat-slip renters would continue to have possessory rights even if the lease is terminated, so that the boat-slip renters' limited interest in their seasonal lease is protected.[27]

## B. Standard of review for failure to state a claim under Rule 12(b)(6)

The Court may dismiss parties' claims for failure to state a claim under Court of Chancery Rule 12(b)(6). The facts for purposes of the motion to dismiss under Rule 12(b)(6) are drawn from the complaint and the documents incorporated by reference and integral to the complaint. In ruling on a motion to dismiss for failure to state a claim, the well-pled allegations of a complaint are assumed to be true and the plaintiff receives the benefit of all reasonable inferences.[28] Conclusions in the complaint are not accepted as true without allegations of facts

---

[25] Def.'s Opening Br. in Supp. of Mot. to Dismiss, 9.
[26] *Id.*, Ex. A, §3(b).
[27] *Id.*, Ex. A, §20.
[28] *See In re Tri-Star Pictures, Inc., Litig.*, 634 A.2d 319, 326 (Del. 1993) (citation omitted); *Prairie Capital III, L.P. v. Double E Holding Corp.,* 132 A.3d 35, 49 (Del. Ch. 2015).

to support them.[29]  But vagueness or lack of detail are not sufficient grounds alone to dismiss for failure to state a claim so long as the complaint provides the defendant with notice of the claim.[30] "Failure to plead an element of a claim precludes entitlement to relief and, therefore, is grounds to dismiss that claim."[31] A broad brush must be used in determining sufficiency of claims – whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof.[32]  If recovery on a particular claim is not reasonably conceivable, then the Court grants the motion and dismisses that claim under Rule 12(b)(6).  If recovery is reasonably conceivable, the motion to dismiss is denied.[33]

## C. Does Count II of the complaint state a claim for equitable rescission?

Count II of the complaint seeks rescission of the Marina lease for failure of consideration, specifically that the Marina failed to supply "the required consideration of discounted boat-slip rentals to the Condominium unit owners per the terms of the Marina Lease."[34]  The Marina argues that this claim should be dismissed because it fails to plead the necessary elements of a claim of equitable

---

[29] *In re Tri-Star Pictures, Inc., Litig*., 634 A.2d at 326.

[30] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Morgan v. Wells*, 80 A.2d 504, 505 (Del. Ch. 1951).

[31] *Zebroski v. Progressive Direct Ins. Co.,* 2014 WL 2156984, at *6 (Del. Ch. Apr. 30, 2014).

[32] *Cent. Mortg. Co.,* 27 A.3d at 536, citing *Savor, Inc. v. FMR Corp.,* 812 A.2d 894, 896-97 (Del. 2002).

rescission and it alleges failure of consideration, for which there are multiple legal remedies.[35] The Association responds that legal remedies could be sought for failure of consideration and other claims but that, since it is seeking injunctive relief under Count I of the complaint, the other claims can be addressed under the Court of Chancery's clean-up doctrine.[36]

Rescission is recognized at law where one party informs the other of their intent not to be bound by the contract.[37] Equitable rescission is appropriate when the relief needed is more than a judicial declaration that a contract is invalid and an award returning the money or property to the plaintiff to restore them to their original condition.[38] It remedies situations "when damages are not available, the amount of damages not ascertainable, or when damages are inadequate to do justice."[39] It is the "unmaking" of an agreement and the attempt to return the parties to the *status quo*.[40]

---

[33] *Cf. In re Tri-Star Pictures, Inc., Litig*., 634 A.2d at 326; *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[34] Verified Compl., 6.

[35] Def.'s Opening Br. in Supp. of Mot. to Dismiss, 10, 12-13.

[36] Pl.'s Ans. Br. in Opp. of Mot. to Dismiss, 13.

[37] *Russell v. Universal Homes, Inc.,* 1991 WL 94357, at *2 (Del. Ch. May 23, 1991).

[38] *Catamaran Acquisition Corp. v. Spherion Corp.,* 2001 WL 755387, at *4 (Del. Super. May 31, 2001), citing *E.I. DuPont De Nemours & Co. v. HEM Research, Inc.*, 1989 WL 122053, at *3 (Del. Ch. Oct. 13, 1989).

[39] *Russell*, 1991 WL 94357, at *2.

[40] *Norton v. Poplos*, 443 A.2d 1, 4 (Del. 1982); *Grzybowski v. Tracy,* 2013 WL 4053515, at *7 (Del. Ch. Aug. 9, 2013).

If there is a full and adequate remedy at law, ordinarily, equity will not step in to rescind a contract.[41] Typically, a claim for equitable rescission is based upon grounds of fraud, misrepresentation or mistake.[42] However, there have been limited cases in which courts have found that a breach of contract could support the use of equitable rescission.[43] In those cases, courts have looked to whether there was "an unjustified failure to perform basic terms of a contract" to warrant rescission rather than mere damages.[44]

In this case, for purposes of the motion to dismiss, I assume that the Association's claim that the discounted boat slips have not been provided to unit owners under the contract to be true. That offers the possibility of a breach of contract claim for damages. The issue before me, however, is whether equitable rescission is appropriate because of this alleged nonperformance under the lease. Looking at equitable rescission, the Association has not alleged that the Marina did not perform the basic terms of the lease to justify the remedy of equitable rescission. Nor has the Association alleged a reasonably conceivable basis for

---

[41] *Russell*, 1991 WL 94357, at *2.

[42] *Norton*, 443 A.2d at 4.

[43] *Schlosser & Dennis, LLC v. Traders Alley, LLC,* 2017 WL 2894845, at *10 (Del. Super. July 6, 2017); *Sheehan v. Hepburn*, 138 A.2d 810, 812 (Del. Ch. 1958) ("outright refusal of one party to a contract to perform the contract or its essentials constitutes such a repudiation as to entitle the other contracting party to treat the contract as rescinded").

[44] *Sheehan*, 138 A.2d at 812.

concluding that equitable rescission is needed – that damages alone would not provide sufficient relief.   Accordingly, I recommend that the Court grant the motion to dismiss Count II for failure to state a claim for equitable rescission.

### D. Does Count III of the complaint state a claim under Rule 12(b)(6) for rescission based upon fraud, unconscionability or collusion?

Count III of the complaint seeks rescission of the contract based upon fraud, unconscionability and/or collusion.   The complaint states that: (1) the rental consideration for the lease is $0.00 in rent for a period extendable to two centuries, and this lease is unconscionable in terms of adequacy of consideration and length of term; (2) the parties to the lease were limited liability companies with identical membership, who "fraudulently colluded" with each other by "being identical entities in terms of ownership"; and (3) fraud was committed when one of the members of the identical limited liability companies, who also acted as property manager of the Association condominium until 2015, paid for marina expenses, including cleaning services, trash disposal, and a $27,100 HVAC contract, out of condominium funds, and allowed condominium parking, facilities and utilities to be used by the Marina for the storage and repair of boats without compensation to, or the permission of, the Association.[45]   The Marina responds that Count III fails to

---

[45] Verified Compl. 6-8.

state a claim for fraud or unconscionability under Rule 12(b)(6) and did not plead the elements of fraud with particularity.[46]

I will address the claims of equitable fraud, unconscionability and collusion, as the grounds for rescission of the lease, in turn. I will start with the claim of equitable fraud. The elements of equitable fraud are similar to the elements of common law fraud, except that proof of scienter – requiring that the person committing fraud acted knowingly or recklessly – is not necessary to obtain relief.[47] And, the party claiming equitable fraud needs to show either a special relationship between the parties such as a fiduciary relationship, or other justification for an equitable remedy.[48] To state a claim for common law fraud, the Association must plead facts supporting an inference that: (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in

---

[46] Def.'s Opening Br. in Supp. of Mot. to Dismiss, 14-20.
[47] *Zebroski,* 2014 WL 2156984, at *7; *Grzybowski*, 2013 WL 4053515, at *6.
[48] *Zebroski*, 2014 WL 2156984, at *7-*8.

justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.[49]

Under Court of Chancery Rule 9(b), fraud must be plead with particularity. To satisfy Rule 9(b), the factual circumstances of the fraud in the complaint must "refer to the time, place, and contents of the false representations; the facts misrepresented; the identity of the person(s) making the misrepresentation; and what that person(s) gained from making the misrepresentation."[50]

Here, the Association's fraud claim fails to satisfy both the threshold reasonable conceivability pleading standard and the heightened pleading standard required by Rule 9(b). The complaint identifies, as the basis for claiming fraud, the identical membership of the parties which created the lease, the 0.00% rent component of the lease consideration, the lengthy lease term, the dual role of one of the members of the Marina as both property manager for the Association and member of the Marina, and that person's failure to assess expenses to the Marina in violation of the lease. Even taking those facts as true, it is a large leap to infer that those facts are sufficient to support a fraud claim or satisfy the heightened pleading standards under Rule 9(b). It is reasonably conceivable to infer a special

---

[49] *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207-08 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007).
[50] *Id.*; *See also Zebroski*, 2014 WL 2156984, at *7.

relationship between the property manager who was a member of the Marina LLC and the Association, because of his dual role, to support a claim for equitable fraud. But, the complaint does not contain particularized facts about misrepresentations by the Marina – let alone time, place or content of misrepresentations – upon which the Association relied.

Similarly, I find that the Association has failed to state a claim for unconscionability. The Association argues that the $0.00 in rent for the lease and the 99-year lease term, with a similar term renewal, makes the lease unconscionable because of adequacy of consideration and length of term. Traditionally, a contract is unconscionable if it is "such as no man in his senses and not under delusion would make on the one hand, and no honest or fair man would accept, on the other."[51] Unconscionability is "a concept that is used sparingly," and usually requires one party, with superior bargaining power using an agreement to "take unfair advantage" of their "weaker counterpart."[52] The determination as to whether a contract is unconscionable is made "in light of its setting, purpose and effect."[53]

---

[51] *James v. National Financial, LLC*, 132 A.2d 799, 813 (Del. Ch. 2016), citing *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978); *See also REDUS Peninsula Millsboro, LLC v. Mayer*, 2014 WL 4261988, at *4 (Del. Ch. Aug. 29, 2014).

[52] *James*, 132 A.2d at 814 (citation omitted).

[53] *Id.*

In *James v. National Financial, LLC,* Vice Chancellor Laster analyzed the factors that guide the analysis of unconscionability under two types – substantive unconscionability and procedural unconscionability, which must be considered as a whole.[54] Substantive unconscionability looks for evidence of a "gross imbalance that 'shocks the conscience'" and whether the terms of the bargain are "so extreme as to appear unconscionable according to the mores and business practices of the time and place."[55] Its factors focus on a cost-price disparity, denial of basic rights and remedies, penalty clauses, placement of disadvantageous clauses in inconspicuous locations or among fine print trivia, paraphrasing of disadvantageous clauses in confusing language or in a manner that obscures the problems they raise, and an overall imbalance in the obligations and rights imposed by the bargain.

Procedural unconscionability focuses on the relative bargaining strength of the parties to determine if "seemingly lopsided terms might have resulted from arms'-length bargaining."[56] Factors relating to procedural unconscionability concentrate on "inequality in bargaining or economic power, exploitation of underprivileged, unsophisticated, uneducated, and illiterate, use of printed form or

---

[54] *Id.* at 815.
[55] *Id.*
[56] *Id.* at 815-16.

boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry-wide standards offered on a take it or leave it basis to the party in a weaker economic position, and the circumstances surrounding the execution of the contract, including its commercial setting, its purpose, and actual effect."[57] If the contract resulted from legitimate negotiation then, regardless of whether it was a bad bargain, the court should not intervene.[58]

To show that an unconscionability claim is reasonably conceivable, the Association would have to plead factual inferences related to the substantive and procedural unconscionability factors that could lead the Court to conclude that the lease, when made, was unconscionable. And, unconscionability arises from a situation involving an extreme imbalance between the parties, in which one party has superior bargaining power and takes unfair advantage of the other, weaker party. The substantive unconscionability factors identified by the Association were the 0.00% rent and the lengthy lease term (99 years, with a possible renewal). Without other considerations, they might be suspect. However, the lease provides for additional consideration and obligations from the Marina, including that the Marina complete all actions necessary to maintain a subaqueous lease with DNREC, maintain marina slips for use by Association unit owners, retain a

---

[57] *Id.* at 826.

sufficient number of marina slips to offer unit owners use of a marina slip at a discounted rate (20% of the market rate), as well as pay its share for maintenance, repair and replacement of parking areas, and for trash removal, utilities and all other expenses to operate and maintain the marina. The parties lived under the lease for more than 10 years – since 2006 – without any concern about the lease's unconscionability arising. The only allegations in the complaint that address procedural unconscionability factors were that the entities serving as the original lessor and lessee were identical, and that, shortly after executing the lease, the contracting parties transferred the lessor's rights under the lease to the Association. Those facts do not make it reasonably conceivable that the entities were dealing in bad faith to such an extent that they created an unconscionable lease for the Association to administer. Nor is it reasonably conceivable that the lease terms are so grossly imbalanced that they "shock the conscience."

The Association's remaining claim – that the lease should be rescinded because of fraudulent collusion – also does not satisfy the "reasonably conceivable" test. The complaint alleges that the parties to the lease were limited liability companies with identical membership, who "fraudulently colluded" with

---

[58] *Id.* at 827.

each other by "being identical entities in terms of ownership."[59]   The only allegations in support of fraudulent collusion are the 0.00% rent, the lengthy lease, and that the limited liability companies that entered into the lease involved identical parties.  As discussed above, these allegations do not make it reasonably conceivable that the lease is the product of fraudulent collusion.

Finally, the Association asks for equitable rescission of the lease in Count III based upon its claims of fraud, unconscionability and collusion.  Since I have found that it is not reasonably conceivable that the Association would recover on its claims of fraud, unconscionability, or collusion under Count III in the complaint, there is no ground remaining upon which equitable rescission could be based under Count III and I do not need to address the rescission claim further at this time.

## CONCLUSION

For the foregoing reasons, I recommend to the Court that the Marina's motion to dismiss be denied in part and granted in part.  I recommend that the Marina's motion to dismiss the complaint for failure to join parties under Rule 19 be denied, and that its motion to dismiss Count II of the complaint for failure to state a claim for rescission based upon failure of consideration and Count III for

---

[59] Verified Compl., 7.

failure to state a claim for fraud, unconscionability or collusion and rescission under Rule 12(b)(6) and Rule 9(b), be granted. Count I of the complaint, which seeks injunctive relief for a breach of contract, remains for consideration by the Court. This is a final report and exceptions may be taken pursuant to Court of Chancery Rule 144.

Respectfully,

/s/ Patricia W. Griffin

Patricia W. Griffin
Master in Chancery

PWG/kekz